# GZJ KDKV'L''

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

|  |  |
|---|---|
| **STEVEN L. McCORMICK and** | * |
| **CAROL E. McCORMICK** | * |
|  | * |
| v. | *     Civil No. 368532 |
|  | * |
| **MEDTRONIC, INC.,** *et al.* | * |
|  | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

The Court having reviewed the Memorandum in Support of Defendants' Motion to Dismiss (DE # 30) filed on behalf of Defendants Medtronic Inc, Medtronic Sofamor Danek USA, Inc, and Vincent Proffitt, the Defendants' Supplemental Authorities (DE #'s 39 & 43), the Plaintiffs' Opposition thereto (DE # 41), and Defendants' Reply Memorandum (DE # 42), and the Court having heard oral argument on April 19, 2013, at a hearing at which Plaintiffs were represented by Cara Luther, Esq., George Tolley, Esq., and Bijan Esfandiari, Esq., and Defendants were represented by Andrew Tauber, Esq. and Lauren Colton, Esq., it is this _19th_ Day of April, 2013, for the reasons stated on the record, by the Circuit Court for Montgomery County, Maryland, the Honorable Joseph A. Dugan, Jr presiding,

**ORDERED**, that the Defendants' Motion to Dismiss (DE # 30), filed on behalf of Defendants Medtronic Inc, Medtronic Sofamor Danek USA, Inc, and Vincent Proffitt, be and the same hereby is **GRANTED**, and Counts II, III, IV, V, VI, VII, & IX are dismissed with regards to Medtronic Inc, Medtronic Sofamor Danek USA, Inc, and Vincent Proffitt.

## ENTERED

APR 2 3 2013

**Clerk of the Circuit Court**
**Montgomery County, Md.**

_Joseph A. Dugan Jr_
Judge Joseph A. Dugan, Jr.

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
----------------------------x
                            :
                            :
STEVEN L. MCCORMICK         :
                            :
        Plaintiff,          :
                            :
        v.                  :       Civil No. 368532
                            :
MEDTRONIC INC.              :
                            :
        Defendant.          :
                            :
----------------------------x
```

HEARING

Rockville, Maryland                    April 19, 2013

NATIONAL CAPITOL CONTRACTING, LLC
200 North Glebe Road, Suite 1016
Arlington, VA 22203
(703) 243-9696

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
----------------------------x
                            :
                            :
STEVEN L. MCCORMICK         :
                            :
        Plaintiff,          :
                            :
        v.                  :        Civil No. 368532
                            :
MEDTRONIC INC               :
                            :
        Defendant.          :
                            :
----------------------------x
```

Rockville, Maryland

April 19, 2013

WHEREUPON, the proceedings in the above-entitled

matter commenced

BEFORE:   THE HONORABLE JOSEPH A. DUGAN, JR., JUDGE

APPEARANCES:

FOR THE PLAINTIFF:
BIJAN ESFANDIARI
Baum Hedlund Aristei & Goldman Pc
12100 Wilshire Blvd Ste 950
Los Angeles, CA 90025

CARA J LUTHER
Baum Hedlund Aristei & Goldman Pc
1250 24th Street NW, Suite 300
Washington, DC 20037

APPEARANCES (continued)

Olley, George S Iii
Dugan, Babij & Tolley, LLC
1966 Greenspring Drive, Suite 500
Lutherville Timonium, MD 21093


FOR THE DEFENDANT:
COLTON, LAUREN S
Hogan Lovells US LLP
100 International Dr. Suite 2000
Baltimore, MD 21202

TAUBER, ANDREW E
1999 K ST NW
Washington, DC 20006

1   don't even have an issue? Then -- then there's no reason for any

2   of these statements?

3          MR. ESFANDIARI:  Correct, and yet, well, there would

4   be, for example, if there was a risk that was not warned about

5   on an indicated use, he may have an -- an argument in that

6   regard, but when Medtronic goes off the reservation

7          THE COURT:  I'm not following you now, but go ahead.

8          MR. ESFANDIARI:  There -- the reason this whole

9   preemption issue arose, Your Honor, is that the FDA approved the

10  specific indicated use, and let's say it left out a specific

11  warning, and plaintiff suffers that side effect. If it's for

12  that indicated use, Mr. Tauber may have an argument of

13  preemption, and I don't necessarily agree with him, but there,

14  he would be one stronger footing. But once Medtronic goes off

15  the reservation, and begins to promote an unapproved use, they

16  can't seek shelter behind the FDCA, and at that point, it

17  becomes a simple negligence case, a fraud case, which Maryland

18  has recognized since time of memorial. I have nothing further to

19  add.

20         THE COURT:  Alright, thank you, counsel. I want to say

21  that I thank all of you for the pleadings that you put in this

22  particular case. I'm sure that the people on the call would

23  respectfully acknowledge that I am easily confused, however, you

24  all have, I think laid this out about as plainly as you possibly

25  could. I guess I'm lucky that other courts have taken a pretty

1   hard look at this before. If you were in front of Judge Rubin,

2   as I said before, he's Chief of the Appellate Section of the

3   Seventh Floor, and no doubt, he'd give you a well reasoned,

4   through opinion with respect to his ruling in this case which

5   you get maybe in a couple of months, I don't know. Judge Rubin

6   has no life so he might pound it out over the weekend, but in

7   any event, the fact of the matter is that I have really -- I've

8   looked at all pleadings, I've looked at the attachments that you

9   said I shouldn't consider anyways, but I think quite honestly,

10  Medtronic's attachment helped your position, with respect to

11  what they were supposed to do, and what the FDA told them to do.

12  The issue is if they're allowed to go off label? And if they go

13  off label, is there a problem there? You all have addressed

14  that, and the arguments, you know, are for exactly the same

15  arguments, and the facts are almost exactly the same as they

16  were in the U.S. District Court Case, which, the last time I

17  checked, when I was in law school, I seem to remember, and I'm

18  sure Mr. Swanson didn't spend a lot of time in the Library, but

19  I did, and I think when you went in the Library,  there were

20  books that were called F-sup [spelled phonetically]. I don't

21  remember seeing any like books out of the trial courts in

22  California, or books out of the trial courts in Denver, and so,

23  I think that they are entitled to a wait, and they are cited

24  frequently in cases, and I will tell you that Chief Judge Vicki

25  Miles-LaGrange in the Kaplan vs. Medtronic case, which

1    interestingly enough came out in Minnesota, I'm not sure you
2    guys have gotten a sneak peak at that opinion before, or you
3    just met the case, but it certainly would have ended the case in
4    Minnesota, you know, it's -- what am I talking about. Yeah,
5    because they're a Minnesota corporation, right? Yeah. Okay,
6    anyways, I'm not sure, but when this came out, or whether or not
7    that had any effect on you, but it says, you know, the facts are
8    exactly the same, before the court is defendants motion to
9    dismiss, plaintiff's amended complaint, filed August 9th, 2012,
10   September 4th, 2012, plaintiff filed a response, and on
11   September 20th, 2012, defendants filed their reply background.
12   On August 25th, 2010, plaintiff had a posterior lumbar interbody
13   fusion surgery at the L5-S1 spine to correct a degenerative disc
14   condition. The infuse bone graph product, infuse device, was
15   used in the surgery. In October and November 2010, plaintiffs
16   symptoms returned and worsened, and included a drop foot
17   condition, allegedly resulting in exuberant bone growth, caused
18   by the use of the unused device. In December 2010, plaintiffs
19   drop foot condition caused a tear of the interior crucic
20   ligament in her right knee, which required surgery in February
21   2011. Because of exuberant bone growth in patients lumbar spine,
22   revision surgery was required on September 9th, 2011. Exuberant
23   bone growth is continuing, and will likely require a second
24   revision surgery. Boy, if that doesn't sound like the exactly
25   same case that we have here, and the opinion of Judge LaGrane

1    goes right down each and every issue that you guys have brought

2    to my attention Your argument of -- the argument of preemption,

3    the argument of implied preemption, the argument of whether the

4    State Court could fit it in some reception under the case law,

5    page two, I think of the opinion. The device that's receiving

6    the most federal oversight is that in class three, which include

7    replacement heart valves, so on and so forth. It's just

8    everything, almost exactly the same. She goes through a -- it

9    seems like every case I read quotes to 12,000 hours, that goes

10   into the pre-marking approval. The FDA -- here it is again, the

11   FDA spend an average of 12,000 hours reviewing each application.

12   Medtronic Inc v. Lure. And it grants premarket approval only at

13   the bonds, there is a reasonable assurance of the device's

14   safety and effectiveness. Alright, so they go through all this,

15   they go through all that, she goes through the whole history,

16   what the purpose of it is, talks about once a device has

17   received pre market approval, the MBA forbids the manufacturer

18   to make it without FDA permission, change the design

19   specifications, manufactured process, labeling, or any other

20   attribute that would affect safety effectiveness. Back to

21   premarket approval, the device is subject to reporting

22   requirements. These include the obligation of informing the FDA

23   of new clinical investigations, or scientific studies concerning

24   the device, which the applicant knows of, or reasonably should

25   know of. 21CFR section 814.84B2, and, to report incidents which

1  the device may have caused or contributed in death or serious

2  injury, or malfunction in a matter that would likely cause or

3  contribute to death of serious injury if it recurred. Then she

4  talks about the motion to dismiss standard, and then she talks

5  about the expressed preemption. Accept this provided in the

6  subsection B of this section, no standard political subdivision

7  of the state may establish, or may continue in affect with

8  respect to the device intended for human use, any requirement,

9  one, which is different from, or in addition to, any requirement

10  applicable to, or under this chapter to the device, and two,

11  which relates to the safety of effectiveness of the device, or

12  for any other matter, included in a requirement applicable to

13  the device under this chapter. In Regal, the United States

14  Supreme Court employed a two step analysis for determining

15  whether state law claims a preemptive under 360KA. The Supreme

16  Court considered whether PMA, a medical device by the FDA,

17  imposes federal requirements under the MBA, see Regal. The Court

18  concluded that PMA imposes federal requirements within the

19  meaning of the MBA. Second, the Supreme Court considered whether

20  the State common law claims would impose requirements different

21  from, or in addition to the requirements imposed by the PMA

22  process, and that relates to safety and effectiveness. The Court

23  concluded that the Plaintiff's State Common Law Claims, for

24  strict product liability, breach of compliance marketing, and

25  negligence in design testing and inspection, distribution,

1  labeling, marketing, and sales of the device would impose

2  requirements different from, or in addition to the requirements

3  imposed by the PMA process. Excluding common law duties from the

4  scope of preemption was made little sense. I mean, she goes

5  through every single issue that you all have raised here, and

6  she dissects it, and she gives a logical explanation for what

7  she does on each and every count of their complaint. She talks

8  about plaintiff must show that the requirements are generally

9  equivalent, State and Federal Requirements are generally not

10 equivalent, as a manufacturer could be held liable under the

11 State Law without having violated the Federal Law. Further,

12 properly led parallel claims, the complaint must set forth facts

13 pointing to specific PMA requirements that have been brought

14 out. Claimant must also allege and make the claim in regards to

15 the alleged injury, and she goes into implied preemption. It

16 does not encapse for the proposition that any violation of the

17 FDCA will support a state law claim, cites Buckley, including a

18 string court bound in some, where plaintiff could maintain their

19 fraud on the agency claims here, and know it's a different kind

20 of facts, they would not be relying on traditional state tort

21 law, which have predated the federal enactments in question. On

22 the contrary, the existence of each federal enactments the

23 critical elements to the case. Plus, a private litigant cannot

24 sue a defendant for violating the FDCA. Similarly, a private

25 litigant cannot bring a State Law claim against a defendant when

1   the State Law claim is in substance, even if not informed, a

2   claim for violating the FDCA. That is, when a claim -- when a

3   state claim would not exist when the FDCA did not exist.

4   Instead, to avoid being impliedly preempted under Buckman, a

5   claim must rely on predictional state torque laws which have

6   predated the federal enactments in question. None of these

7   claims have that state torque law, and it wouldn't exist if it

8   weren't for the FDA marking off brand, and all the rest of that

9   stuff. In other words, the conduct in which the claimant's

10  premise must be the type of conduct that would traditionally

11  give rise to liability under state law, and that would give rise

12  to liability under state law even if the FDCA had never been

13  enacted, you can't allege, you can't have that. If the

14  defendant's conduct is not of this type, then the plaintiff is

15  effectively suing for violation of the FDCA. No matter how the

16  plaintiff labels the claims, and the claimant's claim is thus

17  impliedly preemptive under Croton. She goes through the

18  arguments of the defendant, she goes through the arguments of

19  the plaintiff. For example, additionally, defendants could tend

20  that plaintiff has failed to allege any parallel claims that

21  might survive preemptives. Specifically, defense has not

22  demonstrated how the duties and obligations imposed by State and

23  Federal Law are genuinely equivalent, identical, or how the

24  alleged federal violation caused injury. For example, defendants

25  allegedly violated a federal requirement that manufactures did

1  not promote devices for off label uses. The State Law

2  Requirement that defendants allegedly violated is the

3  requirement that our manufacturer provide adequate warnings to

4  physicians about the risks of it's medical device. But a duty

5  not to promote the devices for off label use is not parallel for

6  a duty to warn of device risks.                Planitiff's

7  arguments: Plaintiff asserts that the FDA only approved the use

8  of this device for empiric procedures, and specifically asked

9  defendants to take measures to prohibit the off label use, and

10  off label promotion of posterior uses. Plaintiff further asserts

11  that posterior use is considered a new indication for which

12  defendants were obligated to obtain FDA approval, if it sought

13  to promote such use.  Yet, defendants never obtained the FDA's

14  approval for posterior use of the infuse device. Because

15  defendants failed to obtain said approval, plaintiff contends

16  defendants intentional promotion of the infuse device for such

17  off label uses was in violation of federal law, and FDA

18  regulations, and thus, defendants are not entitled to the

19  preemption affects. Additionally, Plaintiff asserts that she was

20  alleging parallel claims, arising out of defense illegal, off

21  label promotion, that are not preempted by federal law.

22  Plaintiff contends that defendants were obligated to obtain FDA

23  approval for all of the uses for which they intended to promote

24  the infuse device, and once defendants chose to intentionally

25  promote the infuse device, for off label, unapproved uses, it

1    resulted in a violation of federal law. Plaintiff then contends

2    that defendants failure to obtain approval for posterior use of

3    the infuse device, their intentional off label promotion of the

4    infuse device, and their failure to provide adequate warnings

5    for the off label, unapproved uses, thus subjects them to stay

6    towards liability. I mean -- it's absolutely the exact same

7    factual situation which is in hard to believe, and it's

8    absolutely the exact same argument made by both sides. And she

9    goes through her analysis. Affects of allegations of off label

10   promotion on preemption. That's one. And I'm not going to read

11   them all. She talks about two, plaintiffs fraudulent

12   misrepresentation and fraud in the inducement claim. Plaintiffs

13   constructive fraud claim. Plaintiff's strict product liability-

14   failure to warn claim. Planitiff's strict products-design defect

15   claim. Plaintiff's breach of expressed and implied warranty

16   claims. Seven, plaintiff's negligence claim. Eight, plaintiff's

17   negligent misrepresentation claims. And this is -- I can't

18   remember which one this is under, whether this is negligent or -

19   - negligent misrepresentation, further, even the concept of "off

20   labeled use" is a creature of the FDCA. It's defined by the

21   FDCA, and is not a part of Oklahoma Substantive Law. While

22   plaintiff couches are claimed as a State Law negligence claim,

23   the claim is in substance, a claim from violating the FDCA, and

24   thus, is clearly preemptive under Section 337A. So she goes

25   through each and every claim, and each and every claim is almost

1   exactly the same as what we have here, and then, as I've already

2   read, she goes through your argument that there's a need for

3   discovery in this case, and she blows that up as well. So I'm

4   just -- you know, I just -- I think you all raise some issues,

5   some real good issues, but, the fact of the matter is that I

6   think that, you know, in Tappanger vs. Medtronic, which is a

7   federal supplement, cites that subsection 220-13 West Law,

8   453133, and it's February 6, 2013, I think that Chief Judge

9   Vicki Miles-LaGrange, couldn't of  -- I couldn't begin to go

10  through the arguments and apply them as effectively as she did,

11  and I'm not going to, because I think she's right on point. She

12  hit each and every argument that you've got, and you know, it

13  may be that our Court of Special appeals is going to disagree.

14  Maybe the Court of Appeals is going to disagree, but I don't

15  know how you could set it forth any more plainly than she did in

16  that case, and any more logically than she did in the case; I

17  can't do it. Anybody that knows me can tell you that.  I'm sure

18  Mr. Bonn can tell you that. But I read it twice and I will tell

19  you that certainly I'm very impressed with opinion and as far as

20  I am concerned the analysis is flawless.  If you can - you know

21  you may be able to sell something to our Court of Special

22  Appeals or Court of Appeals and it's contrary public policy or

23  they should be able to do something different in the state of

24  Maryland, but this is clearly preemption.  It's clearly

25  preemption, in my opinion, under the FDCA.  This is a preempted

1  action; it's a harsh result perhaps on clients throughout the

2  county. I don't know.  But the legislature's spoken.  It's

3  preempted. If it's not preempted it's impliedly preempted, all

4  of these claims are.  It's certainly not fraud. You certainly

5  haven't made sufficient allegations for fraud.

6         So the fact of the matter is the court finds - the

7  court is convinced by the motion to dismiss filled by the

8  Medtronics defendants and Mr. Proffitt, the - I've read all

9  pleadings in this case. I've read the motion to dismiss at

10  Docket Entry 30, the defendant's supplemental authority of

11  Docket Entry 39, plaintiff's opposition at Docket Entry 41, the

12  defendant's reply brief at Docket Entry 42. I did not read the

13  case out of Colorado which apparently came in this morning, or

14  late yesterday.  I was not here, had not had the opportunity to

15  that.  I have read the other attachments that have been files

16  subsequent to this.  I think it's an interesting issue but for

17  the reasons indicated in Medtronics pleadings as well as for the

18  reasons - and the reasoning as I've already indicated, is

19  flawless by Judge LaGrange out of - in the Kapliner versus

20  Medtronics case.  The court is going to grant the motion to

21  dismiss.  As to counts - Count 1 was just kind of a factual

22  count, right?  You label in Count 1 but it's facts common to all

23  counts.

24         All right, so Count 2: negligence, Count 3: strict

25  liability, Count 4: breach of warrant, Count 5: fraud, Count 6:

1   negligence per se, Count 7: violation of Maryland Consumer

2   Product Safety Act, and Count - you known I didn't look closely

3   at Count 9. Is Count 9 -

4                MR. ESFANDIARI:  That's consortium, your honor.

5                THE COURT:  Is that against everybody?

6                MR. ESFANDIARI: I believe it's against all

7   defendant's, your honor.

8                THE COURT:  Okay, as well as Dr. Rosner?

9                MR. ESFANDIARI: I believe that's -

10               THE COURT: All right.  It's out as to the Medtronics

11  defendants and Vincent Proffitt. As to Count 8 -

12               MR. BONN: Let me address if I may.  I would formally

13  move, on behalf of Dr. Rosner, for dismissal. I will incorporate

14  by reference the arguments made by Medtronics.  Here is the

15  starting point: paragraph 13.  Dr. Rosner is a consultant and

16  agent for Medtronic, everything that they are - Dr. Rosen did

17  and failed to do was an a agent of Medtronic. They can't have it

18  both it ways. They can't pursue a suit against the agent for

19  carrying out the conduct of the principal which would be

20  preemptive.  So on behalf of Dr. Rosner I move for dismissal on

21  those grounds as well without waiving the arguments I made

22  because the early motion, your honor, was good.

23               THE COURT: All right.  Well, that's not deforming at

24  this time, Mr. Bonn.  I'm going to deny it at this time.  And in

25  any event let me finish here.  The loss of consortium as

1   anything that would deal with a agency, I don't know that he's

2   acting as their agent with respect to inform consent.

3            MR. BONN:   That's the allegation though.

4            THE COURT: Well let me -- you may have to raise than

5   on a different date at a different time, I don't know.  It may

6   depend on how your other thing matters.  But with respect to

7   loss of consortium that's dismissed as to Medtronics and as to

8   Mr. Proffitt.  As to Count 8 which is informed consent against

9   Dr. Rosner and that's – I'm going to give them five days leave

10  to – going to stay the action, I'm going to give them five days

11  leave to file.  However, and it's denied as to Count 9, loss of

12  consortium as to Dr. Rosner.  However, I am going to allow you

13  to go ahead and petition the court on this. They may bounce it

14  back, I don't know. But I do believe that this an important

15  enough issue under the facts and circumstances of this case that

16  I will allow you to petition the court.  It sounds to me, in all

17  likelihood, maybe the whole thing is going to go up anyway.  I

18  don't know – I don't why Dr. Rosner shouldn't be allowed to take

19  this issue up as well.  I doubt he was the – he's certainly not

20  the primary focus of this action.  So I am going to allow that

21  and I have to certify it as what, Mr. Bonn, a final action or –

22           MR. BONN: Actually, yeah – well, no this wouldn't be a

23  final action because it would have to be an interlocking court

24  order.

25           THE COURT:  Right, okay.  I will do that.  And if you

1   prepare an order for my signature, let counsel take a look at it

2   - not that you agree with it.

3            MR. ESFANDIARI: I'll be happy to work with Mr. Bonn to

4   -

5            THE COURT:  Just to sign off on it that you agree that

6   that's what I ordered in the case.

7            MR. ESFANDIARI: Understood.

8            THE COURT:  Okay, and when did you say it's set for

9   trial?

10           MR. BONN: January 27, I believe.

11           THE COURT:  January 27, well I'm not going to touch it

12  with respect to that at this point in time.  We'll leave it on

13  the calendar as to Dr. Rosner.  All right, anything else

14  gentlemen?

15           MR. ESFANDIARI: Not from us, your honor.

16           THE COURT: All right.  It's a very interesting issue

17  and I'm going to pass on a Latin saying that I learned many

18  years ago from the Honorable Joseph Hannen who I clerked for

19  down in the Superior Court in the District of Columbia.  And I

20  saw this guy come in and he had a - even in those days one of

21  those portable wheely things - they didn't have them all with

22  wheels on them back them, you could just slash them all on - all

23  his books lashed and his briefcase, he had the $100,000

24  briefcase and all kinds of books lashed on top and I said, "Wow,

25  look at that guy. He's real ready, your honor.  He' really

1  prepared."  He just shook his head and he said, "Caveat una

2  libre."  I said, "What?" He said beware the man with one book. I

3  said, "Why is that?"  He goes, "Because he has a case right on

4  point."  And unfortunately I think that's what happened to you

5  guys today.  You got hit with the caveat una libre.  I know it's

6  not finding, but it's a very impressive analysis of all these

7  issues.

8          All right, thank you gentlemen for all your efforts.

9  We're going to take a brief recess.  I know we have one case

10 left.

11         (The proceedings were concluded)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    X Digitally signed by Erin Dingle

2                    Digitally signed certificate

3        **NATIONAL CAPITOL CONTRACTING, LLC** hereby certifies

4    that the foregoing pages represent an accurate transcript of the

5    duplicated electronic sound recording of the proceedings in the

6        Circuit Court for Montgomery County, in the matter of:

7                       Civil No. 368532

8                    STEVEN L. MCCORMICK

9                           v.

10                   MEDTRONIC INC.

11

12

13

14                                        By:

15

16

17                                        _Erin Dingle_

18                                        Transcriber

19

20

21

22

23

24

25